UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVAN FARROW, by and through his guardian ad litem, PAMELA FARROW,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>GENUINE PARTS COMPANY MEDICAL PLAN et al.,<br><br>　　　　　　　　Defendants. | Case No. 11cv1107-AJB (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER ENFORCING SETTLEMENT**<br><br>**[ECF No. 31]** |

On April 2, 2012, Defendants Genuine Parts Company Medical Plan and Health & Welfare Benefits Committee of Genuine Parts Company filed a pleading in which, among other requests, Defendants asked the Court to enforce the verbal settlement stated on the record on November 18, 2011 at the conclusion of an Early Neutral Evaluation. ECF No. 31. For the reasons set forth below, the Court recommends that Defendants' motion be granted.

## BACKGROUND

On May 20, 2011, Plaintiffs Joseph and Evan Farrow filed a complaint against Defendants Genuine Parts Company Medical Plan and Health and Welfare Benefits Committee of the Genuine Parts Company for medical benefits under the company's ERISA Health Care Plan. ECF No. 1. On October 12, 2011, Defendants filed an answer denying Plaintiffs' allegations and asserting affirmative defenses. ECF No. 4. In mid-November 2011, Pamela Farrow became the guardian ad litem for her son, Evan Farrow, and filed a First Amended Complaint changing the named

Plaintiff to Evan Farrow, by and through his guardian ad litem Pamela Farrow. ECF Nos. 12 & 13. In this First Amended Complaint, Plaintiff explains that "at the age of 2, Evan suffered a near drowning with resulting brain hypoxia. As a result, for the last 19 years he has been near comatose, requiring 24 hour care." ECF No. 13 at 3. Plaintiff states that Evan received "at-home nursing care" starting in 1996 and "24 hour a day skilled nursing care" starting in 2003 and all of the care was covered by Defendant's ERISA Medical Plan. Id. at 4. Plaintiff alleges that in 2008, Blue Cross became the Plan's new claims administrator and, following Blue Cross' recommendation, Defendants improperly limited coverage for Evan's in-home skilled nursing care. Id. Plaintiff appealed the denial and asserts that, while the appeal was granted, Defendants informed "Plaintiffs that the plan only provided for 60 nursing sessions (8 hours per session) per year and told her as a result they would not pay for more than 20 days per year of 24 hour skilled nursing care." Id. at 5. Plaintiff asked the Plan administrators to reconsider, especially in light of the fact that the Plan had provided Evan with unlimited skilled nursing care for more than a decade. Id. at 5-6. Plaintiff states that the Plan administrators refused to do so and explained "that past 'administrative practices' were irrelevant, had been done so erroneously and there was nothing in the plan that allowed for more than 60 sessions per year of skilled nursing." Id. at 6. As a result, Plaintiff seeks a determination that Evan is entitled to "additional skilled nursing care benefits under the policy," monetary damages for the past medical benefits the family had to pay for, and statutory penalties for Defendant's failure to provide "all relevant documents" (not just the SPD) necessary for Plaintiff to understand why the Plan denied Evan the additional skilled nursing coverage he needs. Id. at 7-10.

On November 18, 2011, the Court conducted an Early Neutral Evaluation (ENE). During this conference, the parties reached an agreement, settling the case. The settlement terms were stated on the record and all parties agreed to them.[1] ECF No. 34. In substance, the parties agreed to the following terms:

- Defendants will pay Plaintiff $75,000.
- The $75,000 settlement figure is a compromise amount. Plaintiff stated that

---

[1] A copy of the transcript is attached as Exhibit A.

        Plaintiff had expended a significantly greater amount of money to obtain the medical care Evan needed.

- Because James Farrow, Evan's father, continues to work for Genuine Parts Company, the parties agreed that Plaintiff's family will continue to receive medical coverage under the Genuine Parts Medical Plan. The parties agreed that the Genuine Parts Medical Plan currently contains a 60-day limit on in-home skilled nursing care.
- All parties will bear their own costs and attorneys' fees.
- Each party will give up all claims known and unknown as they relate to the issues asserted in this case.

Id. at 3-8. The Court advised the parties that defense counsel was going to prepare a settlement agreement incorporating the terms stated on the record. Id. at 10-11. Because the parties had stipulated to this Court's jurisdiction, the parties were instructed to contact this Court if a disagreement arose regarding the settlement agreement. Id. at 11; see also, ECF No. 20 (order consenting to Magistrate Judge jurisdiction). The Court issued an order requiring the parties to complete the settlement process and file a joint motion to dismiss the case by January 23, 2012. ECF No. 19.

      On January 19, 2012, the Court granted Plaintiff's request to continue the settlement deadlines, ordered that the joint motion to dismiss be filed by February 13, 2012 and further ordered that, if the joint motion to dismiss was not timely filed, all counsel of record and unrepresented parties must appear in court on February 16, 2012. ECF No. 22. The joint motion to dismiss was not filed and Plaintiff did not appear in court as required. Defense counsel did appear and advised the Court that Defendants had mailed to Plaintiff several certified letters containing the settlement documents and that Plaintiff had not responded to any of the letters. ECF Nos. 23 & 25. As a result, on February 16, 2012, the Court issued an Order to Show Cause Why Sanctions Should Not be Imposed on Plaintiff for her failure to appear in court. ECF No. 23.

      On March 6, 2012, Plaintiff submitted an "Explanation for Fail to Comply on or before Date for Settlement Agreement Motion to Dismiss and Why Sanctions Should Not be Imposed,"

which the Court accepted despite the lack of signature. ECF Nos. 26 & 27. In her submission, Plaintiff explained that she had lost track of time as her son remains hospitalized and seriously ill. Id. at 1. Plaintiff stated that "I, [as the plaintiffs guardian ad litem] intend to end this ordeal and will not petition for additional terms. I agree without conflict to the additional terms presented by the Defendants Settlement Agreement and Release that is dated December 13, 2011." Id. at 2. However, Plaintiff continued that

> [a]t this point and time the only terms that concern me are from the original agreement during the ENE conference with specific attention to the request for GPC Benefit Group to provide an official letter stating that our group policy is limited to the PPO Plan and that we no longer have the comprehensive coverage for catastrophic illness or injury to cover Private Duty Nursing beyond the 60 visit per year that is only provided under the PPO Medical Plan. ¶ [This official letter is needed to obtain proper coverage through the State and Federal Government for the In-home Private Duty Nursing or facility care that is a medical necessity for Evan's health and well being].

Id.

In response to this submission, the Court declined to impose sanctions, vacated the OSC hearing, and set several deadlines designed to ensure proper resolution of the settled case. ECF No. 28. Plaintiff failed to comply with the deadlines. On March 29, 2012, Plaintiff filed a document entitled "Settlement Agreement." ECF No. 30. In this document, Plaintiff complained that Defendants had provided a "CD of GPC's 2012 SPD" but that what she

> specifically requested [was] legal documentation (that would be required by i.e. the National Insurance Commission) that shows the changes made and date changes went into effect for the GPC Group Insurance Plan. ¶ Coverage for In-Home Care/SNF is limited to The GPC Medical Plan of 60 visits [HMO, PPO, EPO] and there is no-longer additional coverage for said benefit that are under a comprehensive plan or Medical Case Management for catastrophic illness or injury. ¶ Documents requested for verification should not be limited to i.e. NIC. It should be any and all regulatory agency that requires compliance with the laws, regulations and principles of the insurance business.

Id. at 1-2.

In response, Defendants filed a document entitled "Defendants' Response to Plaintiffs' Settlement Filing." ECF No. 31. In this document, Defendants assert that Plaintiff's Settlement Agreement document was "inaccurate and misleading." Id. at 2. Defendants explain that the settlement agreement stated on the record after the ENE did not contain a provision requiring Defendants to provide the information that Plaintiff is now requesting and, in fact, Plaintiff's

coverage assertions are incorrect. Id. at 2-4. In an effort to comply with the Court's order to provide coverage information to Plaintiff, Defendants sent Plaintiff a letter containing the following information:

> This correspondence is being submitted pursuant to the Court's March 9, 2012 Order. (Doc. # 28.) We understand this correspondence is being requested solely for the purpose of providing verification to certain State and Federal governmental agencies regarding the scope of certain benefits offered under the Genuine Parts Company Medical Plan (the "Plan"). Specifically, you have asked the Plan to verify the benefits for home health care services. The Plan provides benefits for:
>
> "Home health care including private duty nursing in the home (maximum 60 visits/year)"
>
> (Plan, SPD 2012, p.25.) Please note that this benefit is subject to all Plan terms and conditions, including, but not limited to, coinsurance, deductibles and out-of-network charges. For a complete description of this benefit and any applicable terms and conditions, please refer to the Plan's SPD, which is attached thereto.

Id. at 5. Defendants asserted that they had repeatedly tried to accommodate Plaintiff's concerns by providing accurate information regarding the company's past and present insurance coverage but that Plaintiff continued to try to get Defendants to admit fault or misconduct and to renegotiate the settlement terms. Id. at 6-9. Due to Plaintiff's repeated refusal to sign the written settlement agreement, Defendants asked this Court to enforce the settlement terms stated on the record in November 2011. Id. at 9.

The Court conducted a settlement hearing on April 24, 2012 to try to resolve the issues remaining between the parties. ECF No. 33. Prior to the hearing, Plaintiff filed another document contesting the terms of the settlement. ECF No. 36. During the hearing, Plaintiff repeatedly contested the terms of the settlement and raised new issues. Despite numerous efforts by the Court and Defendants, Plaintiff steadfastly refused to execute the written settlement agreement or to agree to the settlement terms as previously stated.

## **DISCUSSION**

Plaintiff is challenging the terms of the oral settlement stated in court, on the record, and agreed to by all parties, including Plaintiff. While rare, the Ninth Circuit has addressed this precise situation. Doi v. Halekulani Corp., 276 F.3d 1131 (9th Cir. 2002). In Doi, Plaintiff sued her employer for employment discrimination. Id. at 1133-34. The Court apparently facilitated settlement discussions between the parties and ultimately the parties resolved the case. Id. at

1134. As the court summarized, "[o]n May 10, 2000, counsel for both Doi and Halekulani-as well as both Doi herself and a representative of Halekulani-came into open court to announce that the parties had agreed to settle the case and to place the terms of the settlement on the record." Id. Defense counsel stated on the record the terms of the settlement and then both attorneys and both parties agreed to them. Id. Defense counsel subsequently prepared a written settlement agreement, which Plaintiff refused to sign. Id. at 1335-36. Ultimately, the court granted Defendants' motion to enforce the proposed written settlement agreement and sanctioned Plaintiff $1000 for her "unjust refusal to sign the settlement documents." Id. at 1136.

Plaintiff appealed both rulings and the Ninth Circuit upheld the District Court's ruling. Id. at 1136-41. The Court initially found that the oral settlement agreement was a binding settlement and that Plaintiff agreed to the material terms stated on the record when she responded "yeah" to the question of whether she agreed to the stated terms. Id. at 1137-38 ("[a]ny question as to Doi's intent to be bound was answered when she appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether she agreed with the terms, stated 'yeah'"). The Court rejected Plaintiff's claim that she was entitled to an evidentiary hearing to determine whether an agreement existed and the precise terms of the agreement. Id. at 1138-39. The Court also rejected Plaintiff's claim that the court erred by enforcing the written settlement agreement because it contained terms not fully spelled out at the settlement hearing. Id. at 1139-40. In so doing, the Court stated "we conclude that Doi has not shown that any of the terms of the written agreement prepared by Haledulani were inconsistent with the terms of the agreement made on the record in open court." Id. at 1140.

Similarly, here, the material terms of the settlement were stated on the record by this Court at the conclusion of a court-facilitated settlement conference. ECF No. 34 at 2-5. At the conclusion of the Court's recitation of the terms of the settlement agreement, defense counsel clarified two terms or phrases used by the Court. Id. at 5. Mr. James Farrow then stated that he agreed that the Court had accurately stated the terms of the settlement. Id. Mrs. Farrow then voiced her concern that the settlement did not resolve when or how the Plan coverage had been changed. Id. at 6. The Court explained that the settlement did not resolve those precise

issues but it did resolve the instant litigation. Id. at 6-7. At Mrs. Farrow's request, the Court also clarified "[s]o your position is that you incurred significantly greater damages – [Mrs. Farrow: "Yes. Thank you."] but you're agreeing to settle – to satisfy – even though you believe you were owed the [$]240,000 or more, you are agreeing to give up the extra amount and settle today for $75,000." Id. at 6-7. Mrs. Farrow agreed and also confirmed that she was "agreeing not to sue again for any costs that you [have] incurred from today into the past." Id. at 7 ("I understand that."). Mrs. Farrow then stated, "I've settled. I have settled." Id. at 8. Mrs. Farrow continued on in response to the Court's questions, stating that she understood the terms of the settlement and agreed to be bound by them. Id.

The facts of this case establish that Plaintiff understood the settlement terms and agreed to be bound by them. Plaintiff indicated on the record that she believed Defendants owed her more money than the amount she was settling for and that she was unhappy that Defendants had not complied with her request to provide additional documentation regarding the alleged change in medical coverage.[2] However, despite these concerns or regrets, Plaintiff repeatedly stated that she had settled. As a result, there was a binding settlement agreement and this Court should enforce its terms.[3]

For the reasons set forth above, the Court recommends that the oral settlement agreement be enforced.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation, (2) granting Defendants'

---

[2] The parties' post-settlement filings reflect the on-going disagreement between the parties. Plaintiff repeatedly states or implies that Defendants changed the Plan from providing Evan with unlimited in-home skilled nursing coverage to limiting such coverage to 60 days and Plaintiff wants all documents related in any way to the Plan, coverage limits, or the insurance business. Defendants' position is that the past care Evan received is irrelevant (he may have received more coverage than the Plan allowed), the current Plan describes the current coverage and Defendant is providing that coverage to Evan, and Defendants have produced all relevant documents, including the current Plan, to Plaintiff. These disputes were resolved by the oral settlement. Plaintiff also recently raised new concerns regarding terms contained in the written settlement but not the oral settlement, which is another reason the Court is recommending that the oral settlement, rather than the written settlement, be enforced.

[3] At the conclusion of the ENE, the parties stipulated to the jurisdiction of the undersigned Magistrate Judge. ECF No. 20. However, the stipulated jurisdiction expired on January 31, 2012. Id. As a result, the Court is issuing this Report and Recommendation.

motion to enforce the terms of the settlement stated on the record on November 18, 2012, and (3) dismissing the instant case with prejudice.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties **no later than June 8, 2012**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than June 29, 2012.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: May 18, 2012

*[signature]*

BARBARA L. MAJOR
United States Magistrate Judge